UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LARRY STEVEN HALL,

        Plaintiff,

v.                                                                                          CASE NO. 3:15-cv-72-J-MCR

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for child's insurance benefits. Plaintiff alleges he became disabled on January 1, 1954 due to polio. (Tr. 20.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on April 3, 2013, at which Plaintiff was represented by an attorney. (Tr. 130-85.) On April 29, 2013, the ALJ issued a decision finding that Plaintiff was not disabled because he performed substantial gainful activity after July 5, 1974, the date he attained age 22. (Tr. 20-22.)

Plaintiff is appealing the Commissioner's decision denying his application

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 13, 15.)

for child's insurance benefits.[2]  Plaintiff has exhausted his available administrative remedies and the case is properly before the Court.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the Commissioner's decision is **REVERSED and REMANDED**.

## I.    Standard

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v.*

---

[2] Plaintiff was granted supplemental security income benefits as of April 22, 2011.  (Tr. 20.)  Plaintiff's application for disability and disability insurance benefits was denied due to *res judicata*.  (*Id.*)

*Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.  Discussion

Plaintiff raises two issues on appeal.  First, Plaintiff argues that the Commissioner's finding that Plaintiff's past work as a night shift manager at Coconut Records and Tapes constituted substantial gainful activity is not supported by substantial evidence and is contrary to the testimony of both Plaintiff and his former boss Robert Sturgess.  Second, Plaintiff argues that the Commissioner failed to provide any reasons for not crediting his testimony and Mr. Sturgess's testimony and written statement.

"Substantial work activity" is "work activity that involves doing significant physical or mental activities . . . even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  20 C.F.R. § 404.1572(a).  "Gainful work activity" is "work usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b).  To determine whether a claimant is engaged in substantial gainful activity, the Commissioner considers, *inter alia*, the nature of the work,[3] how well it is

---

[3] "If your work duties require use of your experience, skills, supervision and responsibilities, or contribute substantially to the operation of a business, this tends to show that you have the ability to work at the substantial gainful activity level."  20 C.F.R. § 404.1573(a).

performed,[4] the time spent in work, and whether the work is performed under special conditions. 20 C.F.R. § 404.1573. With respect to special conditions, the regulations provide:

> If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity. . . . However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level. Examples of the special conditions . . . include, but are not limited to, situations in which—
>     (1) You required and received special assistance from other employees in performing your work;
>     (2) You were allowed to work irregular hours or take frequent rest periods;
>     (3) You were provided with special equipment or were assigned work especially suited to your impairment;
>     (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;
>     (5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or
>     (6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.

20 C.F.R. § 404.1573(c).

In evaluating a claimant's work activity for substantial gainful activity

---

[4] "If you do your work satisfactorily, this may show that you are working at the substantial gainful activity level. If you are unable, because of your impairments, to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work, this may show that you are not working at the substantial gainful activity level. If you are doing work that involves minimal duties that make little or no demands on you and that are of little or no use to your employer . . . , this does not show that you are working at the substantial gainful activity level." 20 C.F.R. § 404.1573(b).

purposes, the Commissioner's primary consideration is the claimant's earnings,[5] unless there is information from the claimant, his employer, or others, which shows that not all earnings should be counted. 20 C.F.R. § 404.1574(a)(1). The regulation provides:

> The amount of your earnings from work you have done (regardless of whether it is unsheltered or sheltered work) may show that you have engaged in substantial gainful activity. Generally, if you worked for substantial earnings, we will find that you are able to do substantial gainful activity. . . .
> When your earnings exceed the reasonable value of the work you perform, we consider only that part of your pay which you actually earn. If your earnings are being subsidized, we do not consider the amount of the subsidy when we determine if your earnings show that you have done substantial gainful activity. . . . We will first determine whether the person received a subsidy; that is, we will determine whether the person was being paid more than the reasonable value of the actual services performed. We will then subtract the value of the subsidy from the person's gross earnings to determine the earnings we will use to determine if he or she has done substantial gainful activity.

20 C.F.R. § 404.1574(a)(1)–(2).

Here, Plaintiff does not dispute that his earnings from Coconut Records and Tapes for the relevant period, 1982-1984, exceed the amount for substantial gainful activity, thereby giving rise to the presumption that he engaged in substantial gainful activity. However, Plaintiff argues that he has rebutted this presumption with his own testimony, Mr. Sturgess's testimony and written

---

[5] If a claimant's monthly earnings averaged more than $300 in calendar years 1980–1989, a rebuttable presumption arises that the claimant was engaged in substantial gainful activity during that period. *See* 20 C.F.R. § 404.1574(b)(2).

statement, and Donald Frazier's[6] written statement submitted to the Appeals Council, all of which show that Plaintiff was in a special environment and/or that his employment was being subsidized.  Plaintiff contends that the ALJ never provided any reason for not crediting his testimony or Mr. Sturgess's testimony and written statement, and, instead, picked and chose from the testimony to select only the parts that supported the ALJ's finding and did not provide any reasoning for discrediting the witnesses.  Plaintiff asserts that the ALJ's error is not harmless because the Court is left to speculate as to why the ALJ did not credit the witnesses' testimony and written statements, which makes it difficult for the Court to determine whether the ALJ's decision is supported by substantial evidence.

The Court agrees with Plaintiff that the ALJ failed to make any credibility findings in this case, which was not harmless because the testimony of Plaintiff and Mr. Sturgess, along with the written statements of Mr. Sturgess and Mr. Frazier, was the only evidence in the record before the Commissioner to rebut the

---

[6] Mr. Frazier was also a manager at Coconut Records and Tapes during the relevant period.  (*See* Tr. 116, 126.)  He was prepared to testify at the hearing before the ALJ, but after the testimony of Plaintiff and Mr. Sturgess, Plaintiff's attorney informed Mr. Frazier that it would be futile to testify because the ALJ was "hostile."  (Tr. 126.)  In lieu of live testimony, on June 9, 2013, Mr. Frazier submitted a written statement to the Appeals Council that Plaintiff did not perform the duties of a manager, "he rarely came out of the office and did not lift or move any product in the store nor was there much interaction between him and people in the store," he "had trouble standing for any time," and he "could not physically do what needed to be done."  (*Id.*)  The Appeals Council made Mr. Frazier's written statement part of the record.  (*See* Tr. 8.)

presumption that Plaintiff engaged in substantial gainful activity during the relevant period and to show that Plaintiff was disabled. Where, as here, "proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the [Commissioner's] decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983) (per curiam). Here, as in *Tieniber*, the implied credibility finding is not sufficiently clear to support the ALJ's conclusion that Plaintiff's subjective evidence does not establish disability. The Court cannot infer a credibility finding solely from the ALJ's ultimate finding of no disability. *See id.* Unless the Commissioner articulates the credibility determination with sufficient clarity, the Court cannot determine whether the ultimate finding of no disability is supported by substantial evidence. *Id.*

Here, the ALJ addressed some of the evidence supporting Plaintiff's claim. For example, the ALJ stated:

> [The claimant] . . . explained that most of his job duties were given to other employees. The claimant testified that he did not believe he was earning the money he was paid. He stated he was eventually asked to leave due to his health problems.
> . . . Mr. Sturgess testified that, had the claimant not been his friend or neighbor, he likely would not have hired him because he did not appear to be able to do much.
> Mr. Sturgess testified the claimant was eventually promoted to a night management position because he was unable to do the work of a typical store clerk.

7

(Tr. 21.)  Then, after citing to other parts of the testimony of Plaintiff and Mr. Sturgess, the ALJ found that Plaintiff's job was not sheltered or subsidized and constituted substantial gainful activity.  (Tr. 21-22.)  The ALJ explained:

> There is no indication the claimant's work was done under special conditions pursuant to 42 CFR 404.1573 [sic].  The claimant's employer testified he and another individual worked as night managers and were required to lock the store, check the alarm system and place the store proceeds in the safe.  The claimant performed these duties without difficulty, special accommodations or assistance from others.  The claimant continued to adequately perform these duties and receive his salary for approximately three years, at which time the business was failing and he was terminated on that basis in order to save money.

(Tr. 22.)

It appears that the ALJ picked and chose from the testimony to select only those parts that supported his ultimate finding, without providing any reasons for discrediting the witnesses' testimony in whole or in part.  For example, Plaintiff's testimony indicates that everybody was helping him on the job (Tr. 152) and that he was not assigned tasks normally assigned to managers (Tr. 153).  In addition, Mr. Sturgess's testimony indicates that Plaintiff did absolutely nothing between the time he reported for his night shift and the time he was responsible for securing the store (Tr. 174), and that he was among the first laid off because he was contributing the least (Tr. 177).  Further, in a Work Activity Questionnaire, Mr. Sturgess wrote that he did not consider Plaintiff's work to be fully worth the amount paid and Plaintiff's "value was close to zero" because he "was unable to

8

perform any of the duties required." (Tr. 52.) Mr. Sturgess also indicated that Plaintiff was granted special considerations, such as lower production, lower quality, and more rest periods; that his work was not satisfactory; and that he was frequently absent from work. (Tr. 52-53.) In conclusion, Mr. Sturgess wrote: "Steve was in bad shape. He could not handle merchandise or carry boxes. Steve could barely walk from one end of the store to the other. I would never hire someone in his condition again." (Tr. 53.)

The ALJ did not address this evidence and provided no reasons for discrediting it. "Although an ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision . . . ." *Meek v. Astrue*, 2008 WL 4328227, *1 (M.D. Fla. Sept. 17, 2008) (internal citations and quotation marks omitted). To the extent the ALJ intended to implicitly discredit the witnesses' testimony, his implied credibility finding is not sufficiently clear to support the ALJ's conclusion that the evidence does not establish disability. Therefore, this case will be remanded to the Commissioner to articulate a credibility finding with sufficient clarity to allow for a determination that the ultimate finding of no disability is supported by substantial evidence, and conduct any further proceedings deemed appropriate.

Plaintiff requests that the case be remanded to a different ALJ so that Plaintiff can have a fair hearing. Plaintiff argues that ALJ Thompson was biased as shown by the nature of his questioning and his tone when questioning both

Plaintiff and Mr. Sturgess.  Plaintiff also points out that Mr. Frazier was going to testify on his behalf, but after the ALJ indicated that the hearing was "dragging on" and then it went "off the record," the hearing concluded without Mr. Frazier testifying.  Other than to cite portions of the record showing the ALJ's bias toward this case (*see* Tr. 116-17, 120, 125, 126), Plaintiff does not cite any law to support his argument that the case should be remanded to a different ALJ.  Defendant's brief does not address this issue.

"A claimant is entitled to a hearing that is both full and fair."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam).  In *Miles*, the court stated:

> The ALJ plays a crucial role in the disability review process.  Not only is he duty-bound to develop a full and fair record, he must carefully weigh the evidence, giving individualized consideration to each claim that comes before him.  Because of the deferential standard of review applied to his decision-making, the ALJ's resolution will usually be the final word on a claimant's entitlement to benefits.  The impartiality of the ALJ is thus integral to the integrity of the system.

*Id.* at 1401.

Following the hearing with ALJ Thompson, Plaintiff, Plaintiff's former non-attorney representative Leslie Williams, and Mr. Frazier submitted written statements to the Appeals Council.  Plaintiff's statement provides in relevant part:

> With a quick show of dominance and total authority, Judge Thompson took control of that hearing and bent us to his will.  I was intimidated, belittled and insulted. . . . When he posed the question "Did I ever offer or even think to give back some of my paycheck, seeing that I had not really earned any of it?," I knew right then that

> the outcome of this hearing had already been decided. . . . Sitting there and repeating my response with "No sir, I needed the money" I was rewarded with a smirk of a smile from him. I was left with the impression he found me contemptible for even taking the money. . . . Mr. Sturgess[] came back into the lobby after testifying. He appeared clearly agitated . . . . I asked him how did it go and are you okay? He just shrugged and said "That Judge has his mind made up weeks ago!" . . . .
> A few minutes later Ms Gaglione walked into the lobby. She informed Mr Frazier, that she decided not to bring him into the room to testify. Ms Gaglione stated it was because of the Judge's mood and that he appeared ready to move on with his day.
> To sum up, I feel like I never even got a glimpse of the "intent of the law." What I got was a mugging by a bully Judge who used any possible "letter of the law" as his weapon.

(Tr. 116-17.)

Ms. Williams similarly described ALJ Thompson as "an arrogant judge [who] berate[d] both Steven and his prior employer Bob Sturgess," humiliated Plaintiff by asking him why he accepted a paycheck that he knew he did not deserve, and "humbled the employer into [agreeing] with him that 'yes, I paid Steven to do nothing.'" (Tr. 120.) She encouraged the Appeals Council to listen to the recording of the hearing:

> You will hear Judge Thompson's stern tone and relentless questioning when answers were already clearly stated. You will hear his condescending nature, rude questions and absolute arrogance. Judge Thompson was unfair and clearly had predisposed himself to making an unfavorable decision on this case prior to the hearing.

(Tr. 125.)

While this Court has not heard the recording of the administrative hearing, the transcript of the hearing lends support to the written statements made by

11

Plaintiff and Ms. Williams in that repetitive, improper questions were asked by an impatient and seemingly insensitive ALJ who was ready to move on to the next hearing. While "[i]mpatience is not prejudice," *King v. Comm'r of Soc. Sec.*, 2008 WL 4095493, *2 (M.D. Fla. Aug. 29, 2008), the nature of the questioning, the apparent lack of sensitivity and respect towards the witnesses, and the lack of a credibility determination as to critical testimony and written statements, as discussed earlier, indicate that the ALJ may have prejudged this case before even hearing the witnesses' testimony.

   As Judge Conway stated in *King*, some "courts have held that remand to a different ALJ may be an appropriate remedy, even without an express finding of bias." *Id.* at *5. For example, if there is "a clear indication that the ALJ will not apply the appropriate legal standard on remand," has manifested "inappropriate hostility toward any party," has refused "to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party," or refused "to weigh or consider evidence with impartiality, due to apparent hostility to any party," remand to a new ALJ may be appropriate because the ALJ's conduct has given "rise to serious concerns about the fundamental fairness of the disability review process." *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004). In light of the ALJ's apparent failure to consider evidence favorable to Plaintiff, whether due to hostility, bias, or prejudgment of the case, the Court believes that a remand to a different ALJ is an appropriate remedy in this case,

which will prevent Plaintiff from raising allegations of bias by the same ALJ in any future appeal in this case.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED to a new ALJ** with instructions to consider all evidence in the record, articulate a sufficiently clear credibility finding as to the testimony and statements of Plaintiff, Mr. Sturgess, and Mr. Frazier, and conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

3. Should this remand result in the award of benefits, pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, Plaintiff's attorney is **GRANTED** an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b). Plaintiff's attorney shall file such a petition within **thirty (30) days** from the date of the Commissioner's letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past due benefit calculation stating the amount withheld for attorney's fees. *See* In re: *Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No. 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on January 14, 2016.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record